IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 1 8 2003

Michael N. Milby
Clerk of Court

CIVIL NO: **B-03-147**
(TO BE ASSIGNED)
CRB-98-75

UNITED STATES OF AMERICA
Respondent

VS.

ROY EDWARD CANTU
Movant

MOTION TO VACATE, SET ASIDE OR CORRECT
SENTENCE PURSUANT TO 28 U.S.C. § 2255

SUBMITTED PRO SE:

ROY EDWARD CANTU
REG. NO. 05508-078
FCC-BEAUMONT-LOW
P.O. BOX 26020
BEAUMONT, TX 77720

## ISSUES PRESENTED FOR REVIEW

### ISSUE 1

THE RACKETEERING CONSPIRACY CHARGED IN COUNT TWO IS A LESSER INCLUDED OFFENSE AND THE SAME CONDUCT ALLEGED IN RACKETEERING ENTERPRISE CHARGED IN COUNT ONE OF THE INDICTMENT, COUNSEL FAILURE TO MOVE FOR ACQUITTAL ON THE BASIS OF DOUBLE JEOPARDY, DEPRIVED MOVANT OF HIS CONSTITUTIONAL RIGHTS TO FIFTH AND SIXTH AMENDMENT.

### ISSUE 2

COUNT TWO OF THE INDICTMENT IS MULTIPLICITOUS, COUNSEL FAILURE TO MOVE FOR DISMISSAL ON THE BASIS OF DOUBLE JEOPARDY VIOLATES MOVANT'S FIFTH AND SIXTH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL

### ISSUE 3

MOVANT CONSTITUTIONAL RIGHT TO COUNSEL ON APPEALS WAS ABANDONED WHEN COUNSEL INFORMED MOVANT THAT WRIT OF CERTIORARI WILL BE FILED TO THE SUPREME COURT, BUT FAILED TO SO AS REQUESTED BY MOVANT.

IN THE UNITED STATES DISTRICT ·COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>     Respondent | §<br>§<br>§ | |
| VS. | §<br>§ | CRIMINAL NO. B-98-075 |
| ROY EDWARD CANTU<br>     Movant | §<br>§<br>§ | CIVIL NO. **B-03-147**<br>(TO BE ASSIGNED) |

MEMORANDUM AND POINT OF AUTHORITY IN SUPPORT
OF MOTION TO VACATE, SET ASIDE OR CORRECT
SENTENCE PURSUANT TO 28 U.S.C. § 2255.

COMES NOW, Roy Edward Cantu, (herein-after refers to as movant) in the above captioned case, acting pro se and file this motion and memorandum of law in support pursuant to Title 28 U.S.C. § 2255.

Movant file this motion as a layman who has no factual background in law, as such, request that this Honorable Court take notice of his pro se status and grant this motion a liberal and less stringent standard of review in accord with the Supreme Court holding in Haines V. Kerner, 404 U.S. 519 (1972).

STATEMENT OF JURISDICTION

This Honorable District Court have jurisdiction to hear movant's § 2255 motion since movant was tried, convicted and sentenced in the United States District Court, for the Southern District of Texas, Brownsville Division. Hence, this court held jurisdiction to review this motion, vacate the conviction and set aside the sentence. In alternatively call for evidentiary hearing to resolve the matter in dispute.

1.

<u>REQUEST FOR EVIDENTIARY HEARING</u>

Movant moves this Honorable Court to conduct an evidentiary hearing on the issues raised in this § 2255 motion in order to permit him to develop the records of the claims raised in this motion. Section 2255 provides in pertinent part:

> "Unless the motion and the files and records of the case conclusively show that the prisoner is entitle to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusion of law with respect thereof."

Title 28 U.S.C. § 2255.

Furthermore, § 2255 provides recourse only for transgression of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. <u>United States V. Smith</u>, 32 F.3d 194, 196 (5th Cir. 1994). The function of evidentiary hearing is to resolve contested issues of fact. See <u>Townsand V. Sain</u>, 372 U.S. 293, 309 & n.6, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); <u>Sosa V. United States</u>, 550 F.2d 244 (5th Cir. 1977); <u>Brown V. Lockhart</u>, 781 F.2d 654, 656 (8th Cir. 1986); <u>Baumon V. United States</u>, 692 F.2d 565 (9th Cir. 1982); <u>More V. United States</u>, 950 F.2d 656 (10th Cir. 1991).

Furthermore, when movant claim is based on attorney-client communication, as in this case, and cannot be resolved by the record and affidavits due to the fact that the affidavit turn into a issue of credibility, an evidentiary hearing is required to resolve the issue. <u>Towers V. Philips</u>, 979 F.2d 807 (11th Cir. 1992). This Court should scheduled this case for evidentieary hearing and appoint counsel. See <u>United States V. Vasquez</u>, 7 F.3d 81 (5th Cir. 1993).

2.

## STATEMENT OF THE CASE

On February 11, 1998, movant was indicted as the lone defendant in an indictment which alleged the offenses of Rico (Count One) and Rico conspiracy (Count Two). Movant pleaded not guilty and proceeded to trial on April 13, 1998.

On April 20, 1998, the jury found movant not guilty as to Count One of the indictment, Racketeering Enterprise, in violation of 18 U.S.C. § 1962(c), and convicted him on Count Two Racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). See attached Appendix A, Indictment and Jury verdict.

On June 30, 1998, movant was sentenced to 224 months imprisonment and 5 years supervised release.

## STATEMENT OF FACTS

In 1995, movant was charged in the Eastern District with conspiracy to possess marijuana with intent to distribute, as well as substantive offense of possession with intent to distribute. Movant entered a plea agreement with the government in which he pleaded guilty to the conspiracy charge in exchange for the dismissal of the possession charge. After movant began serving his sentence, the government offered movant the opportunity to reduce his sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure in exchange for his cooperation. Movant agreed, and over the following year provided government with information about his brother Javier Cantu's drug operation.

Beginning on May 15, 1996, and continued into April of 1997, movant provided information concerning crimes that he was a party

3.

to and crimes committed by others. The United States Attorney wrote a letter to movant which set out a ground rules for discussions which were to be held between movant and government agents. The United States Attorney promised that, ..no statement made or other information or documents provided during the proffer will be used directly or derivatively against movant in any criminal case. Pursuant to the agreement, movant provided information to the government, including testimony before a grand jury.

Before the grand jury, the Assistant United States Attorney, Charles Lewis, assured movant that "...the information he provided including his testimony will not be used against him to create a case against him. Before and after movant's grand jury testimony, movant had discussions with the government agents. Movant identified a number of people who had knowledge of criminal activity. Some of these individuals was unknown to the government prior to movant's revelations. Movant provided government with a written summary of the role played by various individuals. Based on movant's assistance to the government, he was removed from prison and was driven to a number of locations to identify places he provided information on.

Movant's cooperation with the government ended when he would not testify against his brother, Javier Cantu. Movant did not testified at his brother's trial and was indicted in the instant case on February 11, 1998.

Count One of the indictment charges movant with Racketeering Activity, in violation of 18 U.S.C. § 1962(c); and Count Two

**4.**

charges him with Racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). On April 13, 1998, movant entered not guilty and proceeded to trial on the charges against him.

On April 20, 1998, the jury found movant not guilty as to Count One of the indictment, Racketeering activity, but convicted him on Count Two Racketeering conspiracy. On June 30, 1998, movant was sentenced to 224 months imprisonment and 5 years of supervised release.

## II. Appeal Proceeding

Movant filed timely notice of appeal and attorney Dale Robertson was appointed to represent him on appeals. On direct appeal, movant raised three issues to be reviewed by the Fifth Circuit: (1) Whether the government violated its cooperation agreement with Cantu by using immunized information in the second prosecution; (2) Whether the government breached its plea agreement with Cantu by basing the instant Rico charges in the same conduct that supported the possession charge previously dismissed in the Eastern District of Texas; (3) Whether the district court erred in giving supplemental instructions to the jury.

On April 11, 1999, the Fifth Circuit Court of Appeals affirmed movant's conviction and sentence. After the affirmation by the Appeals Court, Mr. Robertson wrote movant and notified him about the Fifth Circuit decision in his case. Mr. Robertson advised movant to notified him within 30 days, if he would like to petition for writ of certiorari to the Supreme Court of the United States. Movant responded to his appellate counsel's letter requesting

for him to file writ of certiorari to the Supreme Court. Counsel informed movant that a writ will be file to the Supreme Court on his behalf.

Based on counsel's information that a writ will be submitted to the Supreme Court to review the judgment of the Fifth Circuit Court of Appeals, movant has since believed that his certiorari was pending with the Supreme Court. Movant tried to contact Mr. Robertson on numerous occasion over the years to find out if there has been a decision made by the Supreme Court, but was unable to reach him.

On June 1, 2003, movant wrote to the Supreme Court of the United States and inquired about the writ of certiorari filed by his attorney. On June 10, 2003, Supreme Court forwarded movant a 1996 case information from the Court on Roy Edward Cantu Sr. V. United States, in which the Court dismissed the writ for failure to comply with the Court's order to pay filing fee. However, the information forwarded by the Supreme Court appears to be that of movant's father's case file. See attached Appendix B.

On June 18, 2003, movant again wrote to the Supreme Court, explaining to the Court that the information forwarded to him was in reference to his father's case. Movant again explained to the Court that his lawyer informed him that his writ was filed in October 1999.

On June 25, 2003, the Supreme Court returned movant's letter with a note written in the letter informing him that no writ of certiorari was filed on his behalf by his counsel. See Attached Appendix C, note from the Court and Affidavit in Support of §

6.

2255 motion.

Movant file the instant petition pursuant to Title 28 U.S.C. § 2255, claiming that his Due Process and Sixth Amendment Rights to counsel was violated when counsel failed to move for acquittal; argue multiplicity of the indictment and failed to petition for writ of certiorari when he informed movant that the writ was filed.

---------------------------------------§----------------------------------

7.

## STANDING TO RAISE CLAIM UNDER HABEAS CORPUS § 2255

Pursuant to Title 28 U.S.C. § 2255, [a] prisoner claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. 28 U.S.C. § 2255 (2002). See United States V. Higdon, 832 F.2d 312 (5th Cir.) cert. denied, 484 U.S. 1215 (1988); United States V. Freeze, 707 F.2d 132, 138-39 (5th Cir. 1988).

As written, Title 28 U.S.C. § 2255 provides a statutory means by which an individual, under federal sentence, can obtain federal habeas corpus review of the conviction and sentence imposed. As has long been emphasized by the Supreme Court, Congress enacted § 2255 to provide in the sentencing court a remedy exactly commensurate with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined. See Hill V. United States, 368 U.S. 424, 427 (1962); see also, United States V. Hayman, 342 U.S. 205 (1952); United States V. Casiano, 929 F.2d 1046 (5th Cir. 1991).

Pursuant to Title 28 U.S.C. § 2255, individual convicted and sentenced by the federal court may attacked the validity of the conviction and sentence imosed by claiming one of four different grounds: (1) that the sentence was imposed in violation

8.

of the Constitution or law of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack. See Hill, 368 U.S. at 426-27.

Among other things, 18 U.S.C. § 3742 provides that either the defendant or the federal government may challenge, on direct appeal, a sentence imposed in violation of law. 18 U.S.C. §§ 3742(a)(1), 3742(b)(1). From the movant's perspective, this represent a mere codification of remedy available even prior to the enactment of Sentencing Reform Act of 1984. In other words, both before and after implementation of the sentence Reform Act, a defendant was authorized to seek direct appellate review of an allegedly illegal sentence.

The fact that Congress codified a pre-existing remedy, however, does not by itself, stand for the proposition that Congress also implicitly intended to circumscribe other available pre-existing statutory remedies.

An examination of the differences between § 2255 and§ 3742 convincingly demonstrates that continued recognition of the scope of § 2255 subsequent to the enactment of § 3742 does not create such an irreconcilable conflict. Note, that while Congress made changes to Rule 35 that explicitly foreclosed this vehicle for obtaining review of an allegedly illegal conviction and sentence, Congress took no action towards attending the scope of § 2255. Under accepted Rule of Statutory Construction it is generally presumed that Congress, in drafting legislation, is aware of

9.

well-established judicial construction of other pertinent existing statutes. See Goodyear Atomic Corp. V. Miller, 486 U.S. 174, 108 S.Ct. 1704, 100 L.Ed.2d 158 (1988). To the extent that newly enacted legislation modifies or repeals some statutes but leaves other statutes intact, the conclusion to be drawn is that Congress made a determined choice not to alter those unaffected statutes. Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion. See Rodriguez V. United States, 480 U.S. 522 (1987); Russello V. United States, 464 U.S. 16 (1983); United States V. Wong Kim Bo, 472 F.2d 720 (5th Cir. 1972).

There is nothing inconsistent in recognizing that Congress could logically have changed Rule 35 without altering the scope of § 2255, it can not be denied that the Legislative history of the two are wholly distinct. Viewing former Rule 35(a) and § 2255 in light of their distinct purposes, Congress decision to alter the avenue of relief under Rule 35(a) when it enacted 18 U.S.C. § 3742 is comprehensible and rational.

A motion brought pursuant to former Rule 35 was viewed as a proceeding in the original criminal proceeding. United States V. Arish, 54 F.3d 596 (9th Cir. 1995). Consequently, prior to enactment of the Sentencing Reform Act, a defendant could twice obtain judicial review of an imposed sentence during the original criminal prosecution by raising a challenge on direct appeal or by raising a challenge in a motion under Rule 35(a). See United

10.

States V. Jordan, 895 F.2d 512 (9th Cir. 1989); United States
V. Henry, 709 F.2d 298 (5th Cir. 1983).

On the other hand, proceedings under § 2255 are not
proceedings in the original prosecution, rather a motion pursuant
to 28 U.S.C. § 2255 is akin to initiating an independent civil
suit. See Heflin V. United States, 358 U.S. at 418, n.7 (1959).
The underlying Congressional purpose for enactment of 28 U.S.C.
§ 2255 was to authorize relief to any person who is denied his
or her liberty in violation of the Constitution of laws of the
United States. Thus, in a suit brought under § 2255, petitioner
can raise any claim that could warrant habeas corpus relief.
See Kaufman V. United States, 394 U.S. 217, 221-22 (1969).

Given these differences, it is easily understood why Congress
chose to abolish former Rule 35(a) while leaving the availability
of relief under § 2255 intact. Congress enactment of 18 U.S.C.
§ 3742, and the simultaneous repeal of former Rule 35(a), can
easily be understood as an attempt to streamline the manner in
which sentencing challenges, arising during the original criminal
prosecution, can be presented. By leaving 28 U.S.C. § 2255
unmodified, Congress guaranteed that review and relief would
be available to ensure that. If, for some bona fide reason a
defendant did not or was unable to avail himself of a direct
appeal, fundamental error could nonetheless be corrected.

Under the above reasoning, the AEDPA act of 1996 does not
prevent a federal district court from considering an allegation
and challenge that the conviction and sentence is facially illegal
and unconstitutional. Rather, it ensure that after conviction

11.

became final on direct appeals a defendant will have one year to challenge the method of the conviction and sentence imposed, § 2255(1), or the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence, § 2255(4). Congress enacted § 2255 with the intention that the statute would serve as the primary method of collateral attack on a federally conviction and imposed sentence.

Movant is not attempting to make 28 U.S.C. § 2255 to serve for direct appeal, to the contrary, movant raises issues grounded upon the very fabric of the Constitution of the United States, that every criminal charged defendant who brought before a court of law under indictment of a felony offense should be guaranteed the Due Process Clause of Fifth Amendment Right, that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb..." The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal. And the Sixth Amendment Right to be represented by competent counsel who is for defendant's defense. Hill V. Lockhart, 474 U.S. 52, 59, 106 S.Ct.366, 370, 88 L.Ed.2d 203 (1985); Strickland V. Washington, 466 U.S. 668 (1984); United States V. Kinsey, 917 F.ed 181, 183 (5th Cir. 1990).

Pursuant to Title 28 U.S.C. § 2255(4), which governs the time in which petition for habeas corpus must be filed; "the date on which the facts supporting the claims presented could have been discovered through the exercise of due diligence," movant aver that Constitution mandates that he should be given

12.

an opportunity to file his initial § 2255 motion; and that one year limitation period should start from the date he discovered that his counsel did not perfect writ of certiorari. If movant should be denied an opportunity to file his initial § 2255 motion under this circumstance, the implications for habeas practice would be far reaching and seemingly perverse. To hold otherwise would mean that a dismissal of his initial habeas petition for time barred under AEDPA would bar movant from ever obtaining federal habeas review. See <u>Stewart V. Martinez-Villereal</u>, 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849, (1998).

Thus, movant's initial § 2255 motion should not be time barred, this Court have jurisdiction to review the claims presented, and call for evidentiary hearing to determine why counsel did not petition for certiorari after he informed movant that the writ will be filed to the Supreme Court. <u>Mack V. Smith</u>, 659 F.2d 23 (5th Cir. Unit A 1981). Also, Due Process Clause of Fifth Amendment Right to Constitution, and Sixth Amendment Right to effective assistance of counsel is cognizable claims under 28 U.S.C. § 2255, and infact, the preferred method for relief. See <u>United States V. Navejar</u>, 963 F.2d 732 (5th Cir. 1992).

--------------------------------§--------------------------------

13.

## STANDARD OF REVIEW

### Ineffective Assistance Of Counsel Standard

The Supreme Court has developed a two part test to determine whether counsel committed ineffective assistance during representation of criminal defendant. Strickland V. Washington, 466 U.S. 668, 687, 104 S.Ct 2052, 2064, 80 L.Ed.2d 674 (1984). The proper measure of an attorney's performance is "reasonableness under prevailing professional norms." Id. at 688, 104 S.Ct. at 2065. "Prevailing norms of practice," such as those reflected in the ABA standards, may inform the Courts determination of what is reasonable. Id. Specifically, counsel must "informe[] himself... fully, on the facts and the law," thoroughly advise the client "concerning all aspects of the case," and "keep the client informed of ... developments of the case." ABA standards A-3.8, 4-5.1(a); see also, Strickland, 466 U.S. at 688, 104 S.Ct. at 2064.

The Supreme Court directs that the court's "scrutiny of counsel's performance must be highly deferential" to avoid holding counsel incompetent because of reasonable strategic or tactical judgments which, with the benefit of hindsight, might prove not to have best served his client's interests. Id. at 689, 104 S.Ct. at 2065. Thus, "the defendant must overcome the presumption" that his counsel's action "might be considered sound trial strategy." Id. (Internal quotation omitted). The court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690, 104 S.Ct. at 2066. To that end, the defendant:

14.

> Must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.

Id. Given the considerable discretion to be afforded counsel, a defendant is more likely to prevail on an ineffective assistance of counsel claim where the error he pointed to arise from counsel's lack of diligence rather than the exercise of judgment. 2 W LaFave & J. Isreal, Criminal Procedure § 11.10(c), at 44 (supp. 1990). "Courts will far more readily find incompetency where there has been an abdication-not an exercise- of professional judgment." Id.

Usually, a claim of "ineffective assistance of counsel... require[s] an evidentiary hearing." Indeed, where the defendant did not raise the claim before the district court, the proper standard of practice is to remand for a hearing. Townsend V. Sain, 372 U.S. 293, 309 & n.6, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Smith, 659 F.2d at 24; United States V. Gaviria, 116 F.3d 1498, 1513 (D.C. Cir. 1997).

Applying these principles to the fact of this case, this court will find that counsel's conduct fell below the minimum reasonable standard of competence required by the first part test of Strickland, and there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. Evidentiary hearing is necessary to further develop the record in this case.

15.

## ISSUE 1 [RESTATED]

THE RACKETEERING CONSPIRACY CHARGED IN COUNT TWO IS A LESSER
INCLUDED OFFENSE AND THE SAME CONDUCT ALLEGED IN RACKETEERING
ENTERPRISE CHARGED IN COUNT ONE OF THE INDICTMENT, COUNSEL FAILURE
TO MOVE FOR ACQUITTAL ON THE BASIS OF DOUBLE JEOPARDY, DEPRIVED
MOVANT OF HIS CONSTITUTIONAL RIGHTS TO FIFTH AND SIXTH AMENDMENT.

Argument And Authorities:

The Fifth Amendment to the United States' Constitution
provides that no one shall "be subject for the same offense to
be twice put in jeopardy of life or limb." Thus, "the double
jeopardy clause guarantees that the government, with all of its
resources and power [will] not be allowed to make repeated
attempts to convict an individual for an alleged offense, thereby
subjecting him to embarrassment, expense, and ordeal and
compelling him to live in a continuing state of anxiety and
insecurity..." United States V. Levy, 803 F.2d 1390, 1393 (5th
Cir. 1986)(quoting Green V. United States, 355 U.S. 184, 187-
88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)). See also, United States
V. Juarez-Fierro, 935 F.2d 672, 675 (5th Cir. 1991) (asserting
that the double jeopardy clause of the Fifth Amendment protects
a defendant in a criminal proceeding against repeated prosecution
for the same offense).

A.  Racketeering Conspiracy Is A Lesser Included Offense Of
    Racketeering Enterprise Movvant Was Acquitted In Count One.

Movant argues that the racketeering conspiracy charged in
Count Two as defined by subsection (d) of 18 U.S.C. § 1962 is
a lesser included offense, if not the the same offense charged
in Count One racketeering enterprise. Instructive is example

16.

the Supreme Court decision in Jeffers V. United States, 432 U.S. 137, 155-56, 97 S.Ct. 2207, 2218-19, 53 L.Ed.2d 168 (1977). In Jeffers, the Supreme Court held that drug conspiracy as defined by 21 U.S.C. § 846 or § 963 is a lesser-included offense of a § 848 Continuing Criminal Enterprise (CCE). See also, Rutledge V. United States, 517 U.S. 292, 299-300, 116 S.Ct. 1241, 1247, 134 L.Ed.2d 419 (1996). The crime under § 848 as defined in the Controlled Substance Act and construed by the Supreme Court in Jeffers, includes as one of its elements a conspiracy to violate the provision of the controlled substances or controlled substances Import and Export Acts.

Similarly, the racketeering conspiracy as defined in 18 U.S.C. § 1962(d) requires that the defendant violate any of the provisions of subsection (a), (b) or (c) of § 1962. Thus applying 21 U.S.C. § 848(c) in the context of 18 U.S.C. § 1962(d), the court will find that racketeering conspiracy under § 1962(d) is a lesser included offense of racketeering enterprise under § 1962(c) because, subsection (d) clearly required to prove violation of subsection (c). See 18 U.S.C. § 1962(d). E.g. United States V. Michel, 558 F.2d 986, 999 (5th Cir. 1979) cert. denied. Simply stated in a nut shell, a jury cannot convict of racketeering conspiracy without finding that a defendant participated on racketeering enterprise.

B.  Count Two Conviction Is In Violation Of Double Jeopardy

The test for determining whether two offenses are the same for double jeopardy purposes is "whether the offense charged

17.

in the subsequent prosecution requires proof of a fact which the other does not." United States V. Rodriquez, 948 F.2d 914, 917 (5th Cir. 1991). However, the defendant bears the initial burden of establishing a prima facie claim of double jeopardy. Levy, 803 F.2d at 1393. If the defendant does so, the burden shifts to the government to demonstrate by a preponderance of the evidence that the indictment charges a crime separate from that for which the defendant previously was placed in jeopardy.

The question before this court is whether the racketeering conviction movant was convicted in Count Two was the same as racketeering activity he was acquitted in Count One of the indictment in the present case. It is well settled that, whether two alleged conspiracy are, infact, the same requires a detailed inquiry into the record since the precise bounds of a single conspiracy will seldom be clear from the indictment alone. United States V. Marable, 578 F.2d 151, 153 (5th Cir. 1978) (one conspiracy cannot be broken into several conspiracies because the agreement envisages the violation of several statutes rather than one).

In Marable, the Fifth Circuit enumerated the following factors to determine whether alleged conspirators entered into a single agreement or multiple agreement: (1) Time; (2) persons acting as conspirators; (3) statutory offenses charged in the indictments; (4) overt acts charged by the government sought to punish in each case; and (5) place where the events alleged as part of the conspiracy took place. Id. 578 F.2d 154. See also United States V. Cihak, 137 F.3d 252, 258 (5th Cir. 1998). No

18.

one factor is determinative but, rather, all five factors must be considered in combination. Cihak, 137 F.3d at 258. In making the assessment, the court must look not only at the acts alleged in both counts of the indictment, but also at the act admitted into evidence at trial or at any hearing. United States V. Deshaw, 974 F.2d 667, 669 (5th Cir. 1992).

The factors, as they pertain to movant's case, will be discussed seriatim:

1. **Time**

The time period alleged in both counts of indictment are essentially the same. Count One of the indictment alleges that movant participated in a Rico Activity, 18 U.S.C. § 1962(c) from in or about 1986 and continuously thereafter, up to in or about 1995. Count Two of the indictment accused movant of Rico conspiracy, 18 U.S.C. § 1962(d), from in or about 1986 and continuously thereafter, up to in or about 1995. Thus, both counts of the indictment are of the same year.

2. **Personnel**

The persons alleged to have acted as co-conspirators, and who are specifically named, are the same in the two counts of indictment. Even though count one failed to mentioned names of other co-conspirators except Javier Cantu, however, it stated that movant, together with others known and known. The inclusion of "others" in Count One raises the possibility that the defendants named in Count Two were the same persons known to the government in Count One, or maybe unknown when it alleged

the offense charged in Count One. This possibility lends credence to the contingency that Count One of the indictment is the same offense described in the Count Two under different subsection.

3.    **Statutory Offense Charged In The Indictment**

In Count One of the indictment, the racketeering violation, government alleged that from in or about 1986, and continuously thereafter, up to in or about 1995 in the Southern District of Texas and elsewhere, movant participated directly and indirectly in the conduct of racketeering enterprise, in violation of 18 U.S.C. § 1962(c). In Count Two, the government also alleged that, from in or about the year 1986, through in or about the year 1995, within the Southern District of Texas and elsewhere, movant conspired to participate, directly and indirectly in the conduct of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). See attached indictment, Appendix A.

4.    **Overt Acts Charged or Any Other Description of The Offense Charged Which Indicates The Nature And Scope of The Activity The Government Sought to Punish in Each Count.**

The pattern of racketeering activity alleged to have committed by movant in the conduct of the enterprise's affairs, which consisted of conduct of acts in violation of Title 21 U.S.C. § 841(a)(1) and § 846 are the same in both counts of the indictment.

The conduct alleged in Count One, racketeering Act number 2 is the same as in Count Two, Overt Act 1.

The Conduct alleged in Count One, racketeering Act number

3 is the same as in Count Two, Overt Act 4.

The conduct alleged in Count One, racketeering Act number 4 is the same as in Count Two, Overt Act 5.

The conduct alleged in Count One, racketeering Act number 5 is the same as in Count Two, Overt Act 7.

The conduct alleged in Count One, racketeering Act number 6, is the same as in Count Two, Overt Act 9.

5.    **Place.**

Finally in the instant case, the government charged that Count One occurred in the Southern District of Texas and elsewhere and in the jurisdiction of the court. Count Two does also alleged that the offense occurred in the Southern District of Texas and elsewhere and in the jurisdiction of the court. Also the acts as alleged in both counts of the indictment constituted the same offense. See Attached indictment, Appendix A. Therefore, viewing both counts of the indictment, it is undisputed that both counts are the same charge that was broken into several distinctive offense. Furthermore, it suggests that Count Two of the indictment brings a more broad perspective to the same offense alleged in the Count One of the indictment.

Under this circumstance, movant have made a showing that there is an overlap in the statutory offense charged in Counts One and Two of the indictment, as well as an overlap in conduct and time between both counts. Furthermore, movant has demonstrated that both counts of the indictment have a similar recitation of racketeering activities, as well as a showing of parallels

in the location of the alleged activities. Thus, these can be viewed as adequate to establish a prima facie showing that two counts of the indictment are the same, thereby, establishing a prima facie claim of double jeopardy.

Based on the above, Count Two of the indictment which charges movant with Rico conspiracy should have been barred unless government can prove by a preponderance of evidence that Count Two of the indictment and underlying Overt Act in Count One movant was acquitted are factually distinct. See e.g. United States v. Delgado, 256 F.3d 264, 272 (5th Cir. 2001).

C.  **Counsel Failure To Move For Acquittal On Count Two Deprived Movant Of Fifth And Sixth Amendment Rights.**

Counsel failure to move for acquittal or dismissal of Count Two of the indictment was sufficiently agregious to constitute constitutionally ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Here counsel should have moved for acquittal on the basis that Count Two of the indictment was a lesser included offense and violation of double jeopardy clause. It is so because, the subsection (d) of the 18 U.S.C. § 1962 make clear that a defendant cannot be convicted of racketeering conspiracy without first been convicted of racketeering activity under subsection (c) of 18 U.S.C. § 1962.

Movant contends that he was deprived the Due Process of Fifth Amendment Right and Sixth Amendment Right to effective advocate because, counsel failed to subject the government case to meaningful adverserial testing. Thus, movant is entitle to

a decision on the merits of this claim. See Murray V. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1966) (holding that a habeas petitioner may avoid procedural default by showing that counsel's performance was constitutionally ineffective).

Here, counsel objected to supplemental instruction given by the district court after the jury was deadlocked. However, he failed to move for acquittal based on a clear and convincing issue of lesser including offense and double jeopardy. Thus, failure to raise the issue at trial could not reflect a plausible strategy to pursue more promising grounds. See Mayo V. Henderson, 13 F.3d 528, 533 (2nd Cir. 1994), holding that "a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Moreover, relief may be warranted when a decision by counsel cannot be justified as a result of some kind of plausible trial strategy. See Kimmelman V. Morrison, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

Movant suffered actual prejudice that resulted in the conviction on Count Two of the indictment he was actual innocence. Had counsel moved for acquittal on Count Two on the basis of lesser included offense and double jeopardy violation, it is more likely that the district court would have held a prompt hearing and determine whether movant could have been convicted of racketeering conspiracy under subsection (d) of 18 U.S.C. § 1962 without having been found guilty of violation of racketeering activity under subsection (c) of 18 U.S.C. § 1962.

Surely, the district court may have entered an acquittal on Count Two because, allowing a criminal defendant to be convicted on lesser included offense of racketeering conspiracy after he was acquitted by a jury of racketeering activity exposed him twice in jeopardy of the offense for which a jury found him innocence. Moreover the clear language of the statute enacted by the Congress make it clear that no person charged with racketeering conspiracy under § 1962(d) should be convicted of the offense without first been convicted of racketeering enterprise under § 1962(c).

-----------------------------------§-----------------------------

**24.**

ISSUE 2 [RESTATED]

COUNT TWO OF THE INDICTMENT IS MULTIPLICITOUS, COUNSEL FAILURE
TO MOVE FOR DISMISSAL ON THE BASIS OF DOUBLE JEOPARDY VIOLATES
MOVANT'S FIFTH AND SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE
OF COUNSEL.

Count Two of the indictment charged movant with racketeering
conspiracy, this count is multiplicitous. In the case sub judice,
Count One of the indictment charges movant with participating
direct and indirect in a conduct of racketeering activity, in
violation of 18 U.S.C. § 1962(c). Count Two charges movant with
racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).
In both counts, the offense alleged started from 1986 until 1995.

Movant contends that Count One which charged the offense
of racketeering activity with the conducts violated, encompasses
offense of racketeering conspiracy charged in Count Two. Thus,
the subsequent charge in Count Two exposes movant to a danger
of been tried twice and convicted of offense he was previously
acquitted.

The risk arising from multiplicitous indictment is the
possibility that the defendant will receive, as evidenced in
the instant case, more than one conviction for a single offense.
See United States V. Cluck, 143 F.3d 174, 179 (5th Cir. 1998),
cert. denied, 525 U.S. 1073 (1999). The rule against multiplicity
stem from the Fifth Amendment to the Constitution which forbids
placing a defendant twice in jeopardy for one offense. United
States V. Kimbrough, 69 F.3d 723 (5th Cir. 1995). Count One of
the indictment underscores the government allegation that
racketeering activity was part of single offense that lasted

from 1986 until 1995. Racketeering Acts 1-7 of the Count One alleges all criminal conducts that encompassed in racketeering conspiracy alleged in Count Two.

### B.    Ineffective Assistance Of Counsel

Counsel did not object to the indictment before trial. Failure to do so fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88. Movant have a Due Process to be represented by counsel who is competent on his behalf. Counsel failure to object to a clear and obvious issue of multiplicity of the indictment cannot be viewed as a trial strategy, rather, as a break down on advarserial process during the crimunal prosecution in this case. Furthermore, there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.ct. at 2068.

Had counsel objected to multiplicity on Count Two, there is strog presumption that it will be dismissed before trial. Significantly, had Count Two been dismissed, movant would have not been exposed to double jeopardy of been tried and convicted for the same offense which he was previously acquitted. Even so, the prospect of movant been tried twice on the same offense due to counsel's errors in failure to object to the multiplicity of the indictment is perversively incomprehensible especially when it resulted to a conviction of charge which a criminal defendant may have been actual innocence, Murray V. Carrier, 477 U.S. at 488, 106 S.Ct. at 2639.

26.

## ISSUE 3 [RESTATED]

**MOVANT CONSTITUTIONAL RIGHT TO COUNSEL ON APPEALS WAS ABANDONED WHEN COUNSEL INFORMED MOVANT THAT WRIT OF CERTIORARI WILL BE FILED TO THE SUPREME COURT, BUT FAILED TO DO SO AS REQUESTED BY MOVANT.**

Movant contends that his court appointed appellate counsel Mr. Dale Robertson abandoned to file a writ of certiorari to the Supreme Court as requested by movant, but informed movant that a petition will be filed. After movant's direct appeal was affirmed by the Fifth Circuit Court of Appeals. Counsel informed movant in September about the Court's decision. Movant wrote his counsel and requested for him to file writ of certiorari to the Supreme Court. At the time, movant was placed in the Special Housing Unit (SHU) at FCI-Low, Big Spring, Texas. Subsequently, Mr. Robertson wrote movant and informed him that he will petition to the Supreme Court should he wanted him to do so. Movant requested for his counsel to proceed with the writ to the Supreme Court.

In March 2000, movant called his appellate counsel's office to find out whether there has been any decision from the Supreme Court and to obtain all the record of his case file from Mr. Robertson, but was unable to reach him. Movant have tried to contact Mr. Robertson but was told that he was either busy or in court.

On June 1, 2003, movant wrote to the Supreme Court himself requesting to know if there has been a decision made by the Court on his writ of certiorari. On June 10, 2003, the Supreme Court responded to movant's request by forwarding case file

that was purportedly filed in 1995, Roy Edward Cantu, Sr. V. United States. The case file belong to movant's father, which was dismissed in 1996 for failure to comply with Court Rule. On June 18, 2003, movant again wrote the Supreme Court informing the Court that the information send was that of his father's case. Movant informed the Court that his court appointed attorney Mr. Robertson, told him that his petition for writ of certiorari will be filed in October 1999. On June 25, 2003, Supreme Court again responded to movant's letter stating that his attorney had not filed any writ of certiorari on his behalf. See Attached Appendix, B, C, and D.

A criminal appellant must face an adversary proceeding that like a trial is governed by intricate rules that to a lay-person would be hopelessly forbidding. An unrepresented appellant, is like unrepresented defendant at trial, is unable to protect the vital interests at stake. Evitts V. Lucey, 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985). In Penson V. Ohio, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), the Supreme Court held that the "prejudice" component of Strickland, does not apply when an appellant lawyer fail to file a brief or to satisfy the requirement of Anders or apply for withdraw from the Appellate Court after initial appeal. See also, Rodriques V. United States, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969).

One obvious difficult with this issue is that movant was told by counsel that a writ to Supreme Court will be filed after movant requested for him to proceed to Supreme Court.

28.

Interestingly, counsel informed movant that certiorari was filed to the Supreme Court, but, in fact no certiorari was actually filed. Movant certiorari was recklessly abandoned despite his request and counsel's assurance that it will be file. Although, Constitution does not require lawyers to advise their client about the right to petition for writ of certiorari, but the Constitution is only implicated when a defendant actually requested to petition for certiorari and counsel disregarded, but informed a defendant that it was filed.

Movant will be entitle to post-conviction relief if his allegation is proven true. § 2255 requires an evidentiary hearing on the issue that was not develop by the record of the proceedings. Friedman, 588 U.S. at 1010. See generally Machibroda V. United States, 365 U.S. 487, 494-96, 82 S.Ct. 510, 513-14, 7 L.Ed.2d 473 (1962).

To be sure, the Fifth Circuit cases states that if movant could prove that his counsel had deceived him by leading him to believe that a timely petition for certiorari will be filed, he would be entitled to post-conviction relief in the form of an out-of-time appeal. Atilas V. United States, 406 F.2d 694 (5th Cir. 1969); Kent V. United States, 423 F.2d 1050 (5th Cir. 1970); Perez V. Wainwrght, 640 F.2d 596 (5th Cir. 1981) (when Sixth Amendment Right have been violated by counsel who promises but fails to file a timely appeal, proper remedy under 28 U.S.C. § 2254 is out-of-time appeal in the state court). Thus movant is entitle to an out-of-time petition for writ of certiorari, or in alternatively an evidentiary hearing on effectiveness of Mr. Robertson's representation.

## CONCLUSION

For the above reasons, movant's conviction and sentence under Count Two of the indictment should be vacated. Count Two conviction was a result of Fifth and Sixth Amendments violation. Alternatively, an evidentiary hearing should be granted in other to permit the court to resolve the claim of ineffective assistance of counsel in this case.


Dated: July 10, 2003                    Respectfully Submitted:

                                        Roy Edward Cantu
                                        Reg. No. 05508-078
                                        FCC-Beaumont-Low
                                        P.O. Box 26020
                                        Beaumont, Texas 77720

## CERTIFICATE OF SERVICE

The undersigned hereby, certify under penalty of perjury, that a correct copy of this Title 28 U.S.C § 2255 petition was served on the attorney for the government by U.S. mail, postage prepaid, address to: Assistant U.S. Attorney, Attn: Charles Lewis, 1036 E. Levee, Brownsville, Texas 78520.


Dated: July 10, 2003                    Respectfully Submitted:

                                        Roy Edward Cantu.


30.

**APPENDIX A**

**INDICTMENT AND JURY VERDICT**

GJ_____

## UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF TEXAS

#### BROWNSVILLE DIVISION

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
FILED
4/1/98
MICHAEL N. MILBY, CLERK

UNITED STATES OF AMERICA       §
                               §
            v.                 §    CRIMINAL NO. B-98-75
                               §
ROY EDWARD CANTU               §
                               §

## CRIMINAL INDICTMENT

THE GRAND JURY CHARGES:

### COUNT ONE

### The Enterprise

At various times relevant to this indictment the defendant ROY EDWARD CANTU, and others known and unknown, were members and associates of the Javier Cantu drug ring, a criminal organization whose members and associates engaged in illegal drug importation, possession and distribution and which operated principally in the Southern District of Texas.

The Javier Cantu drug ring, including its leadership, members and associates, constituted an "enterprise" as that term is defined in 18 U.S.C. Section 1961 (4) (hereinafter "the enterprise"), that is a group of individuals associated in fact. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

### Purposes of the Enterprise

The purposes of the enterprise included the following:

a. To make money illegally through the distribution and re-distribution of marihuana on an ongoing basis.

b. To protect the enterprise from discovery by law enforcement

0365

c. To hide and protect the illegal moneys generated by the enterprise.

## Means and Methods of the Enterprise

Among the means and methods by which the Defendant and his associates conducted and participated in the conduct of the affairs of the enterprise were the following:

Javier Cantu, the Defendant, and others would arrange to receive and store in Cameron County, Texas, large quantities of marihuana smuggled into Cameron County, Texas, from Mexico.

The marihuana would be weighed and stored in Cameron County, Texas, until the marihuana was shipped to customers in Arkansas or shipped to Houston, Texas for redistribution to others.

Various methods of transportation were used by the Defendant and his criminal associates to further the affairs of the enterprise, including cars, tractor trailer rigs, and commercial transportation companies.

In Houston the marihuana would be stored in various locations until distributed to others.

Proceeds from the marihuana sales were returned to Cameron County, Texas.

The Defendant and others used communication devices, including telephones, cellular phones and pagers to further the affairs of the enterprise.

## The Racketeering Violation

From in or about 1986, and continuously thereafter, up to in or about 1995 in the Southern District of Texas and elsewhere and

2

in the jurisdiction of this Court,

ROY EDWARD CANTU

Defendant herein, together with others known and unknown, being persons employed by and associated with the enterprise described above, which was an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did unlawfully, willfully, and knowingly conduct and participate directly and indirectly in the conduct of such enterprise's affairs through a pattern of racketeering activity, that is, through the commission of the following acts of racketeering activity.

The pattern of racketeering activity, as defined by Title 18, United States Code, Sections 1961(1) and 1961(5), committed by the Defendant in the conduct of the enterprise's affairs, consisted of the following racketeering acts  in violation of Title 21, United States Code, Sections 841(a)(1), and 846:

<u>Racketeering Act No. 1</u>

That from in or about the year 1986 until in or about the year 1995 in the Southern and Eastern Districts of Texas, and elsewhere, and in the jurisdiction of this Court:

ROY EDWARD CANTU

did knowingly and intentionally combine, conspire, confederate and agree together with other persons, known and unknown to the grand jury to distribute and to possess with intent to distribute in excess of 1000 kilos of marihuana, a controlled substance under Schedule I of the Controlled Substances Act of 1970, in violation of Title 21, United States Code, Section 841(a)(1), all in

3

0367

violation of Title 21 United States Code Section 846.

Racketeering Act No. 2

That on about January 19, 1986 in the Southern District of Texas, and in the jurisdiction of this Court:

ROY EDWARD CANTU

did knowingly and intentionally possess with intent to distribute approximately 18 kilograms of marihuana, a controlled substance under Schedule I of the Controlled Substances Act of 1970, in violation of Title 21, United States Code, Sections 841(a)(1).

Racketeering Act No. 3



Racketeering Act No. 4

That on about January 25, 1991 in the Southern District of Texas, and in the jurisdiction of this Court:

ROY EDWARD CANTU

did knowingly and intentionally possess with intent to distribute approximately 68 kilograms of marihuana, a controlled substance under Schedule I of the Controlled Substances Act of 1970, in violation of Title 21, United States Code, Sections 841(a)(1).

Racketeering Act No. 5

4

O36P

That on about October 20, 1994 in the Southern District of Texas, and in the jurisdiction of this Court:

ROY EDWARD CANTU

did knowingly and intentionally possess with intent to distribute approximately 18 kilograms of marihuana, a controlled substance under Schedule I of the Controlled Substances Act of 1970, in violation of Title 21, United States Code, Sections 841(a)(1).

Racketeering Act No. 6

That in or about November, 1994, in the Southern District of Texas, and in the jurisdiction of this Court:

ROY EDWARD CANTU

did knowingly and intentionally possess with intent to distribute at 4705 Young Street, Brownsville, Texas, in excess of 100 kilograms of marihuana, a controlled substance under Schedule I of the Controlled Substances Act of 1970, in violation of Title 21, United States Code, Sections 841(a)(1).

Racketeering Act No. 7

That on about April 25, 1995 in the Southern and Eastern Districts of Texas, and in the jurisdiction of this Court:

ROY EDWARD CANTU

did knowingly and intentionally possess with intent to distribute approximately 90 kilograms of marihuana, a controlled substance under Schedule I of the Controlled Substances Act of 1970, in violation of Title 21, United States Code, Section 841(a)(1).

5

0369

Violation: Title 18, United States Code, Section 1962(c).

## COUNT TWO

The paragraphs of Count One describing the enterprise, the purposes of the enterprise, and the means and methods of the enterprise are hereby realleged and incorporated as if fully set forth herein.

From in or about the year 1986 through in or about the year 1995, within the Southern District of Texas and elsewhere and in the jurisdiction of this court

### ROY EDWARD CANTU

Defendant herein, and Javier Cantu, Fabian Cavazos, Tony Sepulveda, Guadalupe Pena and others known and unknown, being persons employed by and associated with the Javier Cantu drug ring enterprise, which engaged in, and its activities affected, interstate and foreign commerce, did wilfully, knowingly, and intentionally combine, conspire, confederate and agree together to violate  Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that  enterprise through a pattern of racketeering activity as defined by Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of Racketeering Acts 1 through 7 specified in Count One, which Racketeering Acts are realleged and incorporated by reference as if fully set forth below.

It was part of the conspiracy that the Defendant agreed to the

6

O370

commission of at least two acts of racketeering in the conduct of the affairs of the enterprise.

Pursuant to the conspiracy the following and other overt acts were committed in the Southern District of Texas and elsewhere:

### Overt Acts

1.  On January 19, 1986 ROY EDWARD CANTU, Javier Cantu and others transported approximately 18 kilos of marihuana to the Harlingen Airport in Harlingen, Texas.

2. On December 3, 1986 Fabian Cavazos and Russell Blackwell transported approximately 11 kilograms of marihuana from Cameron County, Texas, to the area of Saint Martin Parish, Louisiana.

3. On December 16, 1987 Fabian Cavazos and Javier Lopez Cantu transported from Cameron County, Texas to Panola County, Texas approximately 5.7 kilograms of marihuana.



5. On January 25, 1991, ROY EDWARD CANTU, Fabian Cavazos, Julio Gallardo and Jose Galvan possessed approximately 68 kilograms of marihuana and $47,890 in U.S. currency in Houston, Texas.

6. On April 16, 1993, Javier Cantu, Tony Sepulveda, Bobby Herrera and others assisted in the loading and transportation of approximately 293 kilograms of marihuana. This load was taken to the UPS facility in Brownsville, Texas, where it was placed in a

0371

trailer that was to be hauled north out of Cameron County, Texas.

7. On approximately October 20, 1994, ROY EDWARD CANTU and Fabian Cavazos helped load approximately 18 kilos of marihuana into in a dog kennel in the back of a pick-up truck located in the area of Houston, Texas. This pick-up truck was then driven to Gregg County, Texas, by Terry Lee Crump.

8. In April, 1995, ROY EDWARD CANTU, and Fabian Cavazos assisted in loading approximately 90 kilos of marihuana into a Ford Bronco truck driven by Mark Miller. Later that same day ROY EDWARD CANTU and Fabian Cavazos attempted to transfer this marihuana from Miller's vehicle into a 1993 GMC pick-up in Shelby County, Texas.

9. In the fall of 1994 ROY EDWARD CANTU stored large quantities of marihuana at his residence on 4705 Young Street, Brownsville, Texas.

Violation: 18 U.S.C. 1962(d).

A TRUE BILL
FOREMAN

JAMES H. DeATLEY
UNITED STATES ATTORNEY

By: _Charles Lewis_
CHARLES LEWIS
Asst. U.S. Attorney

TRUE COPY I CERTIFY
ATTEST:
MICHAEL N. MILBY, Clerk of Court
By _____
Deputy Clerk

8

0372

United States District Court
Southern District of Texas
FILED

APR 20 1998

Michael N. Milby
Clerk of Court

# United States District Court

## SOUTHERN DISTRICT OF TEXAS

UNITED STATES OF AMERICA                    VERDICT

V.                                          CRIMINAL NO. B-98-75

ROY EDWARD CANTU

WE, THE JURY, FIND THE DEFENDANT ROY EDWARD CANTU

_Not  Guilty_ _____ on Count 1,
(Insert "Guilty" or "Not Guilty")

If you have found the Defendant Guilty on Count 1, indicate which of the Racketeering Acts you unanimously found that the Defendant committed beyond a reasonable doubt, by answering "yes" or "no".

Answer "Yes" or "No"

| Racketeering Act One | No |
| Racketeering Act Two | No |
| Racketeering Act Four | No |
| Racketeering Act Five | No |
| Racketeering Act Six | No |
| Racketeering Act Seven | No |

_Guilty_ _____ on Count 2,
(Insert "Guilty" or "Not Guilty")

as charged in the indictment.

_V. Elgohary_                          _20-Apr-1998_
Foreperson's Signature                 Date

.0051

**APPENDIX B**

**(1)  LETTER TO THE SUPREME COURT**
**(2)  CASE INFORMATION FOWARDED BY THE COURT**

OFFICE OF THE CLERK
SUPREME COURT OF THE UNITED STATES
WASHINGTON, DC 20543-0001

Re: <u>UNITED STATES OF AMERICA V. ROY EDWARD CANTU</u>
CA5 No. 98-40799

Dear Clerk of the Court,

This letter is in reference to my writ of certiorari that was filed by my appeal lawyer in 1999, in the above styled case. The Fifth Circuit Court of Appeals affirmed my conviction and sentence on August 11, 1999 and my lawyer filed writ of certiorari to the Supreme Court. I am requesting to know if there has been a decision made by the Supreme Court. It has been more than three years since my lawyer told me that he filed a writ of certiorari to the Supreme Court.

I have been trying to contact my lawyer to find out if any decision has been made, but was unable to reach him. My family have also tried to reach him to find out if there has been any decision made, but was unsuccessful.

I spoke to an inmate writ writer working in the institutional law library about this matter, he advice me to write the Supreme Court to find out if there has been any decision made.

Sir, could you please let me know if there has been a decision made. If not, to inform me when the decision is made. Thanks for your time and patient in this matter. I look forward to hear from you soon.

Dated: June ⎵ ,2003

Respectfully Submitted:

Roy Edward Cantu
Reg. No. 05508-078
FCC-Beaumont-Low
P.O. Box 26020
Beaumont, Texas 77720

RECEIVED

JUN 10 2003

OFFICE OF THE CLERK
SUPREME COURT, U.S.

# SUPREME COURT OF THE UNITED STATES
## OFFICE OF THE CLERK
## WASHINGTON, DC 20543–0001

February 13, 1996

WILLIAM K. SUTER
CLERK OF THE COURT

AREA CODE 202
479-3011

Edmund K. Cyganiewicz
1000 East Madison
Brownsville, TX  78520

    RE:  Roy Edward Cantu, Sr. v. United States

Dear Mr. Cyganiewicz:

    This office has had no response to the enclosed letter dated July 31, 1995, requesting that your petition for a writ of certiorari be corrected.  Also enclosed is check number 2094, dated July 26, 1995, in the amount of $300.

    Unless the petition is received in this office in corrected form within 60 days of the date of this letter, the petition will not be filed.  Rule 14.5.

                        Sincerely,
                        William K. Suter, Clerk
                        By:

                        Loretta S. Ruffin
                        (202) 479-3039

*The corrected petition was never received by this office.*

Enclosures

cc: Solicitor General

**SUPREME COURT OF THE UNITED STATES**
**OFFICE OF THE CLERK**
**WASHINGTON, DC 20543–0001**

July 31, 1995

WILLIAM K. SUTER
CLERK OF THE COURT

AREA CODE 202
479-3011

Edmund K. Cyganiewicz
1000 East Madison
Brownsville, TX  78520

    RE:  Roy Edward Cantu, Sr. v. United States

Dear Mr. Cyganiewicz:

    Returned are 40 of the 41 copies of a petition for a writ of certiorari in the above-entitled case postmarked on July 28, 1995 and received on July 31, 1995, which fails to comply with the Rules of this Court.

    If you intend to pay the $300 docket fee, the petition must be on paper that is 6 1/8 by 9 1/4 inches as stated in Rule 33.1(d).

    The appendix to the petition as required by Rule 14 must be on paper that is 6 1/8 by 9 1/4 inches as stated in Rule 33.1(d).

    The current term is October Term 1995.

    The petition must bear a suitable cover consisting of heavy paper, front and back.  Rule 33.1(e).

    The proof of service must be separate from the petition, not within it.  See Rule 29.5.

    In accordance with Rule 29.4(a), please serve three copies of your petition upon the Solicitor General of the United States, Room 5614, Department of Justice, 10th Street and Constitution Avenue, N.W., Washington, D.C. 20530, and forward proof of said service to this office.

    Kindly redo the petition and appendix so that it complies in all respects with the Rules of the Court and return it to this office promptly so that it may be docketed.  Unless the petition is received by this Office in corrected form within 60 days of the date of this letter, the petition will not be filed.  Rule 14.5.

    This office shall retain one copy of the petition and your check in the amount of $300.00 in expectation of receipt of a properly prepared petition.

# SUPREME COURT OF THE UNITED STATES
## OFFICE OF THE CLERK
## WASHINGTON, DC 20543–0001

**WILLIAM K. SUTER**
CLERK OF THE COURT

AREA CODE 202
479-3011

      Enclosed is a copy of the Rules of the Court and memorandum
concerning the preparation of a petition.

                           Sincerely,
                           William K. Suter, Clerk
                           By:

                           Ruth Jones
                           (202) 479-3022

Enclosures

**APPENDIX C**

**SECOND LETTER TO THE SUPREME COURT/ COURT RESPONSE**

OFFICE OF THE CLERK
SUPREME COURT OF THE UNITED STATES
WASHINGTON, DC 20543-0001

Re: UNITED STATES V. ROY EDWARD CANTU
CA5 No. 98-40799

Dear Clerk of the Court;

I received the information you mailed per my request on writ of certiorari filed on the above styled name case. However, it appear that the information you mailed is in regard to my father's case that was petition for writ of certiorari in 1995.

The Fifth Circuit Court of Appeals affirmed my conviction and sentence on August 11, 1999, and my lawyer told me that he filed a writ of certiorari to the Supreme Court in October 1999. I have not heard from my lawyer regarding whether any decision has been made on the petition. It has been more than three years since my lawyer told me that the petition was filed.

Please advise me if there has been a decision made by the Supreme Court on my writ of certiorari. Your time and assistance in this matter is highly appreciated.

Dated: June 18 , 2003

Respectfully Submitted:

Roy Edward Cantu
Reg. No. 05508-078
FCC-Beaumont-Low
P.O. Box 26020
Beaumont, Texas 77720

6/25/03

A review of our docket + correspondence Systems does not show that any case was filed on your behalf in this Court.

RECEIVED
JUN 25 2003
OFFICE OF THE CLERK
SUPREME COURT, U.S.

**APPENDIX D**

**AFFIDAVIT IN SUPPORT OF § 2255 MOTION**

STATE OF TEXAS                          §
                                        §
                                        §
COUNTY OF JEFFERSON                     §

<u>AFFIDAVIT IN SUPPORT OF 28 U.S.C. § 2255</u>

BEFORE ME, the undersigned authority, personally appeared Roy Edward Cantu, Reg. 05508-078, who after being duly sworn, deposed as follow:

My name is Roy Edward Cantu, I am sound mind and capable of making this affidavit, and over the age 21 years old. I am personally aware of the facts stated herein, which are true and correct to the best of my knowledge based on the corresponding and conversation I had with my court appointed appellate counsel Mr. Dale Robertson.

After my conviction and sentence was affirmed on initial appeal by the Fifth Circuit Court of Appeals on August 11, 1999, Mr. Robertson wrote me in September 1999 and notify me about the decision of the Court. At the time, I was placed in the Special Housing Unit (SHU) at FCI-Low, Big Spring, Texas. I wrote Mr. Robertson approximately few days after receiving his letter and requested for him to petition to the Supreme Court for writ of certiorari. Subsequently, Mr. Robertson wrote me and notify me that he will petition to the Supreme Court for certiorari in October 1999.

In March 2000, I called Mr. Robertson's office to request for my case file along with the copy of petition filed to the Supreme Court. I was told that Mr. Robertson was not in the office, however, I was assured that he will be notified of my requests. I have tried to reach Mr. Robertson on numerous occasion to inquire about my petition in the Supreme Court, but was told that he is either busy with a client or in court.

I was reluctant to discuss my case with another inmate or sought for assistance due to fear that I may be targeted or labeled as a government informant based on the substantial assistance rendered to the government.

After three years of waiting to hear from Mr. Robertson regarding my requests and whether there has been a decision made by the Supreme Court, I decided to speak with an inmate writ writer working in the prison library about what I should do since my lawyer have refused to notify me about Supreme Court decision. I was advised to write the Supreme Court and inquire whether there has been a decision made by the Court.

1.

On June 1, 2003, I wrote the Supreme Court of the United States and inquired whether any decision has been made on my petition. On June 10, 2003, the Supreme Court forwarded a docket case that was filed in 1995. The case information belong to my father, Roy Edward Cantu Sr V. United States. The information showed that a writ of certiorari filed on behalf of Roy Edward Cantu Sr was dismissed in 1996, for failure to comply with the Court order of filing fee.

On June 18, 2003, I wrote to the Supreme Court again explaining that my lawyer told me that my petition was filed in October 1999. I requested to know if any decision has been made. On June 25, 2003, the Supreme Court responded to my request stated that the docket and correspondence system does not show that any case was filed on my behalf in the Supreme Court.

Had I known over the years that Mr. Robertson did not petition to the Supreme Court as he told me that he did, I would have sought for alternative source to petition the Supreme Court for review, or proceeded with my post-conviction review.

I, Roy Edward Cantu, hereby execute this affidavit under penalty of perjury pursuant to Title 28 U.S.C. § 1746, on this _9_, day of July, 2003.

Affiant: _____

Roy Edward Cantu

Sworn and Subscribed to before me on this _9_, day of July, 2003.

_____
Notary Public, State of Texas.

WILLIAM THOMAS JR.
Notary Public, State of Texas
My Commission Expires
July 30, 2006

2.