IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 0 5 2003

Michael N. Milby
Clerk of Court

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| Respondent § | |
| § | |
| VS. § | CR. NO. B-98-75 |
| § | (Civil Action No. B-03-147) |
| ROY EDWARD CANTU § | |
| Petitioner § | |

TRAVERSE TO RESPONDENT'S ANSWER TO PETITIONER'S
TITTLE 28 U.S.C. § 2255 MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE.

NOW COMES Petitioner, Roy Edward Cantu, appearing through pro se representation and hereby files this traverse to respondent's answer to petitioner's § 2255 motion to vacate set aside and correct sentence, and also request for evidentiary hearing.

DISCUSSION

The government has presented numerous inaccurate information of material facts pertinent to petitioner in its statement of facts. However, petitioner will not address all the inaccuracy of government's statement of facts, but fell compelled to bring to the court's attention the following allegation leveled against petitioner by the government which is categorically false and misleading to the court.

The government in its statement of the facts alleged that in March of 1993, petitioner and Rosario Cantu, was stopped in Refugio County, Texas while driving a vehicle with insurance

1.

in the name and address of Esperanza Vasquez, 124 Camino Del Rey, Brownsville. And that at the time of the stop she [Rosario Cantu] was in possession of $12,500 in currency that was concealed inside a food carton, and that further investigation revealed that the vehicle identification number she was driving had been tampered and that the vehicle had been stolen from Arkansas. (Govt. Resp. at Pg 11-12).

At the time of the above allegation, petitioner was in prison for a sentence he received from his guilty plea on September 11, 1992. Petitioner was serving his 7 years TDC prison sentence at McConell Unit, Brownsville Texas, and was not released until May 5, 1994. The record of his incarceration in McConell Unit will substantiate this fact. The facts that government alleged in its response simply did not occurred, and evidentiary hearing will help the court to flush out the truth of this matter.

Under this circumstances, petitioner's traverse will address only the specific points, facts, arguments, and authorities raised by the government which requires a response.

The government is not entitled to dismissal where petitioner presented material facts, which if true, (and they are) support a constitutional violation and cannot be resolved by the record and required an evidentiary hearing. See United States V. Brigg, 939 F.2d 222, n.8 (5th Cir. 1991). Furthermore, petitioner's claims supported with affidavit that his court appointed appellate counsel informed him that writ of certiorari was filed, but actually no certiorari was filed to the Supreme Court cannot be resolved by the record, and government did not present any

2.

affidavit to rebut petitioner's claim, requires evidentiary hearing to resolve the issue. See <u>Towers V. Phillips</u>, 979 F.2d 807 (11th Cir. 1992); <u>Friedman V. United States</u>, 588 F.2d 1010 (5th Cir. 1979). This Honorable Court should schedule this case for an evidentiary hearing and appoint counsel. See <u>United States V. Vasques</u>, 7 F.3d 81 (5th Cir. 1993).

### <u>RESPONSE FOR EVIDENTIARY HEARING</u>

The government did not rebut petitioner's credible affidavit that his court appointed appellate counsel informed him that a writ of certiorari was filed to the Supreme Court. An evidentiary hearing is therefore required to determine why counsel told petitioner that a writ has been filed on his behalf, but indeed no certiorari was filed. Petitioner's claim requires a hearing where the issue cannot be resolved by the record. See <u>Friedman</u>, 588 F.2d at 1015.

### <u>RESPONSE FOR TOLLING THE STATUTE OF LIMITATION.</u>

CAUSE HAS BEEN ESTABLISHED FOR DUE DILIGENCE FOR THE COURT TO TOLL THE STATUTE OF LIMITATIONS AND TO DETERMINE THE MERITS OF PETITIONER'S CLAIMS, CALL FOR EVIDENTIARY HEARING.

---

Section 2255(4) establishes the date on which the limitations period shall run from the latest of-

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Accordingly, if the "date on which the facts supporting [petitioner's ineffective assistance claim] could have been

discovered through the exercise of due diligence" was no earlier than June 25, 2003, [the date the Supreme Court notified him that his lawyer had not file writ of certiorari on his behalf], petitioner's § 2255 was timely filed.

In its response, government treated § 2255(4) as if it were a basis for "extending the limitations period" beyond one year after petitioner's conviction became final. Govt. Resp. Pg. 17-18. In other words, government interpreted the section as if it provided a ground for tolling limitations period, rather than as defining the time when the limitation period began. In accord with its approach, government examined petitioner's conduct for due diligence after September 2, 1999. Govt. Resp. Pg. 20-21. This was error.

Section 2255(4) is not a tolling provision that extends the length of the available filing time by excluding certain periods that post-date the start of the limitations period's beginning date, moving it from the time when the conviction became final, see § 2255(1), to the later date on which the particular claim accrued. See Smith V. McGinnis, 208 F.3d 13, 17 (2nd Cir. 2000) (distinguishing tolling provisions from those that restart the limitations period). It was therefore incorrect for government to argue, for § 2255(4) purposes, whether petitioner's entire four years delay comported with due diligence, and to conclude, as it did, that since petitioner made no additional attempt to contact his court appointed appellate counsel [after he told him that certiorari has been filed] for assurance that his petitioner for certiorari was indeed filed, government concluded

that the length of delay was undue, and thus did not support a finding of due diligence under § 2255(4). In effect, the government's argument attempt to deprive petitioner of one year during which, under the AEDPA, he was entitled to rest on his claim.

Petitioner contends that due diligence plainly did not require him to check up on his court appointed appellate counsel's pursuit of his writ of certiorari after counsel told him that a certiorari will be filed to the Supreme Court. See Reo V. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2002) ("]A] defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice"). The statute of limitations, therefore, did not begin to run until sometime after petitioner's certiorari. That is the date on which petitioner discovered that his counsel did not perfect his certiorari after counsel told him that writ was filed to the Supreme Court.

Accordingly, the tolling of statute of limitation should be appropriate in this case, and petitioner has exercise a due diligence in bringing his petition under § 2255(4).

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL.

The Strickland Standard:

The Strickland standard was clearly set forth in petitioner's opening § 2255 memorandum brief and will not be repeated herein. The standard governing prejudice under Strickland is a lower burden of proof that the preponderance of evidence standard.

5.

See <u>Bouchillon V. Collins</u>, 907 F.2d 589, 595 (5th Cir. 1990); <u>James V. Collins</u>, 56 F.3d 662 (5th Cir. 1995); <u>Strickland V. Washington</u>, 466 U.S. 668, at 694, 104 S.Ct. 2052, at 2068, 80 L.Ed.2d 674 (1984). A criminal defendant is guaranteed, through the due process clause, to a trial free from fundamental unfairness, including any unfairness which stems from blatantly incompetent counsel. See <u>Clark V. Blackburn</u>, 619 F.2d 43 (5th Cir. 1980).

A. **Failure To Perfect Writ Of Certiorari After Counsel Had Told Petitioner That The Writ Has Been Filed To The Supreme Court.**

In its response, government argued that counsel was not ineffective for failing to file writ of certiorari to the Supreme Court because petitioner had no right to counsel in pursuit of his writ of certiorari. Govt. Resp. Pg. 19. In support of this contentions, government relied in <u>United States V. Eisenhardt</u>, 10 F.Supp.2d 521, 522 (D. Ct. Md 1998).

Government's argument in this claim is misplaced and its principle authority is equally distinguished from the fact of the instant case. A counsel who told his defendant client that a writ of certiorari has been filed to the Supreme Court, but actually no writ was file on behalf of his client is constitutionally ineffective regardless of whether his client has right to counsel to pursue discretionary review in the Supreme Court. This is not a situation in which counsel's advice regarding pursuing a certiorari was bad or based on judgmental decision. In fact, this is a clear case of abandonment by a court appointed counsel. This case is identical to situation where counsel had

deceived and lied to his criminal defendant client by leading him to believe that a timely appeal has been filed. See Kent V. United States, 423 F.2d 1050 (5th Cir. 1970).

Furthermore, government's principle authority in this argument is distinguish with the fact of this case. In Eisenhardt, the defendant claims that the Sixth Amendment was violated when his retained attorney failed to advise him to pursue certiorari relief from the Supreme Court after Fourth Circuit Court of Appeals affirmed on direct appeal. 10 Supp.2d at 522. The district court held that the Supreme Court has flatly held that no ineffective assistance claim under the Sixth Amendment is made out by a contention that counsel, retained or appointed failed to pursue discretionary relief in the Supreme Court. Id. at 522.

Eisenhardt, is distinguish here because petitioner unlike the defendant Eisenhardt did not claim that his counsel failed to advise him about pursuing writ of certiorari to the Supreme Court. Rather, petitioner in this case claimed that his counsel told him that a writ of certiorari was filed, but indeed no certiorari was filed by the counsel. In support of petitioner's claims, he submitted a credible affidavit and evidence of due diligence when he discovered that counsel had not filed certiorari on his behalf. In response, government did not obtain any form of affidavit from court appointed counsel, and did not dispute that counsel promised petitioner that certiorari was filed.

Had petitioner made only conclusionary allegation contradicted by the record and files, an evidentiary hearing would not be necessary. But where petitioner would be entitled

7.

to post-conviction relief if his factual allegations were proven true, § 2255 requires an evidentiary hearing on those allegations. Friedman, 588 F.2d 1010; Powers V. United States, 446 F.2d 22 (5th Cir. 1971); see generally Machibroda V. United States, 368 U.S. 487, 494-96, 82 S.Ct. 510, 513-14, 7 L.Ed.2d 473 (1962). Petitioner is entitle to evidentiary hearing in this claim and effectiveness of his court appointed appellate counsel.

B.  Counsel Was Ineffective For Failure To Move For Acquittal On Count Two Of Indictment Based On Double Jeopardy Violation.

In its response, government argues that no ineffective assistance of counsel resulted by counsel failure to move for acquittal on the basis of double jeopardy because, the Supreme Court has recognized that, RICO conspiracy is different from the substantive RICO offense. In support of its argument, government cited Supreme Court decision in Salinas V. United States, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997). Govt. Resp. Pg. 23-24.

In Salinas, the Supreme Court reach the question whether a defendant charged with RICO conspiracy can be convicted of the offense without been found guilty of two substantive RICO offense under 18 U.S.C. § 1962(c). After examining the statutory language of § 1962(d), the Court found that there is no requirement of some overt act or specific act in the statute before the Court, unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an "act to effect the object

8.

of the conspiracy." Id. 522 U.S. at 63. The Supreme Court did not reach the question [unlike the petitioner's case] where the indictment alleged the same overt acts in RICO conspiracy count as it did in substantive RICO count. Although, the Supreme Court goes further to note as it observed in Bannon V. United States, 156 U.S. 463, 39 L.Ed, 494 15 S.Ct. 467 (1895), "to require an overt act to be proven against every member of the conspiracy, or a distinct act connecting him with the combination to be alleged, would not only be an innovation upon establishment principles, but would render most prosecution for the offense nugatory." Id. 156 U.S. at 469, 39 L.Ed. 494 15 S.Ct. 467.

Petitioner contends that to reason as the Supreme Court did in Salinas will require the government in a RICO conspiracy charge, § 1962(d), not alleged an overt act. However, if as here, the government elect to alleged an overt act in the RICO conspiracy count, similar to that of RICO substantive count, § 1962(c), the double jeopardy has attached, and petitioner is barred by subsequent prosecution on the RICO conspiracy count. See Blockbueger V. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (the standard for determining whether two offenses are the same for double jeopardy purposes).

To be sure, in United States V. Nichols, 741 F.2d 767, 771 (5th Cir. 1984), the Court concluded that the defendant's prior conviction on conspiracy count barred his subsequent prosecution on similar conspiracy charges. Nichols, 741 F.2d at 768-69. Nichols involved the smuggling of cocaine from Colombia into the United States. Id. at 769. Two conspirators organized an

ongoing scheme under which a plane would fly from the United States to Colombia, load cocaine, refuel in Belize, and then return to a remote part of Louisiana. See Id. The defendant, Billie Joe Nichols, was the pilot for three such operations, and the intended pilot for an aborted fourth operation. See Id. at 769-70.

The government obtained four indictments against Nichols, each relating to a single operation within the overall scheme. See Id. at 770. For his participation in planning of the fourth operation, Nichols was convicted of conspiracy to import cocaine and conspiracy to possess with intent to distribute cocaine. See Id. Nichols then argued that double jeopardy barred his prosecution for the conspiracy counts of remaining indictments, which pertained to the earlier operations. After identifying the controlling issues, the Court employed the five factors enumerated in United States V. Marable, 578 F.2d 151, 154 (5th Cir. 1978). Upon consideration of all the factors, the Court determined that Nichols participated in one conspiracy to commit multiple violations of the drug laws, and therefore held that double jeopardy prohibited his prosecution on the conspiracy charges of the remaining indictments. See Nichols, 741 F.2d at 772-73.

Similarly, in United States V. Levy, 803 F.ed 1390, 1393 (5th Cir. 1986), the defendants had been indicted for conspiracy to defraud the United States and the Federal Deposit Insurance Corporation, and to make false statement to a federally insured bank (FPB). See 803 F.2d 1392. While the indictment was pending,

the defendants were acquitted on charges of conspiracy to misapply funds in connection with loan by FPB, and conspiracy to make false statement in connection with a loans from a different banks. See id. Following their acquittal, the defendants filed a motion to dismissed the pending indictment on grounds of double jeopardy and collateral estoppel. See Id.

The Court in Levy found the conspiracies alleged in both indictments involve the same geographic location, and some of the same specific places within that location. See Id. Based on the foregoing analysis, the court concluded that all five Marable factors favored the existence of single conspiracy. Id. Accordingly, the Court found that double jeopardy barred the prosecution of the defendants on the conspiracy charges of the second indictment.

In the instant case, petitioner asserts that the five Marable test in determining whether double jeopardy barred his prosecution in Count Two, RICO conspiracy count are evident and present in this case. The time, personnel, statutory offense, acts charged and places of the offense alleged in count one, RICO substantive acts are the same as that of Count Two, RICO conspiracy overt act. (See detailed factor in petitioner's brief and memorandum of law in support of § 2255 motion). Under this circumstances, the RICO substantive count petitioner was acquitted was indeed the same RICO conspiracy count he was later convicted. Because petitioner was previously acquitted on RICO substantive count that alleges similar overt act as in RICO conspiracy count, his conviction on RICO conspiracy count was barred by double jeopardy as in both Nichols and Levy.

If, however, petitioner was barred from his conviction in RICO conspiracy, it is an error for the counsel not to move for acquittal on Count Two based on double jeopardy. Counsel failure to do constituted deficient performance and prejudicial to petitioner. See Strickland V. Washington, 466 U.S. 668, 104 S.Ct 2052, 2064, 80 L.Ed.2d 674 (1984).

For the same reason, trial counsel was ineffective for failure to object to the indictment on multiplicity and appellate counsel was also ineffective for failure to raise the issue on appeal under plain error. Had the issue of multiplicity on the indictment was presented to the district court, there is a strong presumption that Count Two of the indictment will be dismissed before trial or vacated on appeal, and petitioner would not have been exposed to double jeopardy of been convicted and imprisoned for the same offense which he was acquitted.

Even so, the prospect of petitioner been tried twice on the same offense due to counsel[s] errors in failure to raise the issue of multiplicity of the indictment is perversesively incomprehensible. Especially when it resulted to a conviction of charge which a criminal defendant may have been actual innocence. See Murry V. Carrier, 477 U.S. 478, 488 106 S.Ct. 2639, 91 L.Ed.2d 397 (1966).

Petitioner's ineffective assistance claim deserves hearing for development of record. In Fontain V. United States, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973) (per curiam), the Court remanded the case for evidentiary hearing where, on the record before the Court, it could not "conclude with the

assurance required by the statutory standard 'conclusively show' that under no circumstances could the petitioner establish facts warranting relief under § 2255...." Id. at 215, 93 S.Ct. at 1462. Section 2255 provides in pertinent part:

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the Court shall cause notice thereof to be serve upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusion of law with respect thereto. (emphasis added). See Coco v. United States, 569 F.2d 35 (5th Cir. 1978); Tosh v. Lockhart, 879 F.2d 412 (8th Cir. 1989); More v. United States, 950 F.2d 657 (10th Cir. 1991).

The critical question is whether petitioner's allegations of ineffective assistance of counsel, when viewed against the record of this case and unopposed credible affidavit submitted by petitioner, are so "palpably incredible" or so "patently frivolous" as to warrant summary dismissal without hearing. Baum v. United States, 692 F.2d 565 (9th Cir. 1982).

For these reasons, petitioner was denied effective assistance of counsel, when his court appointed counsel told him that a writ of certiorari was filed to the Supreme Court while in fact no certiorari was filed on his behalf. And for the same reasons counsel failure to object to the RICO conspiracy count and multiplicity of the indictment, exposes petitioner to a danger of been tried and convicted for the same offense he was acquitted, in violation of double jeopardy.

13.

## CONCLUSION/RELIEF REQUESTED.

Petitioner has advanced a credible, carefully undisputed claims of prejudice, where both the trial and appellate counsels were not functioning as reasonable competent counsel should during the advarserial process in this case. Petitioner respectfully request that this court vacate his conviction, set aside sentence and remand this case back for further proceedings.

Alternatively, an evidentiary hearing should be granted to permit the district court to determine why court appointed counsel lied and deceived his criminal defendant client that a writ of certiorari was filed to the Supreme Court, while indeed no certiorari was filed by the counsel. Petitioner ask the court to grant any other available remedy that the court may deem appropriate.

Dated: November 28, 2003                    Respectfully Submitted:

                                            _____
                                            Roy Edward Cantu
                                            Reg. No. 05508-078
                                            FCC-Beaumont-Low
                                            P.O. Box 26020
                                            Beaumont, Texas 77720

14.

## CERTIFICATE OF SERVICE

The undersigned, hereby, certify under penalty of perjury, that a correct copy of the foregoing traverse to respondent's answer to petitioner's § 2255 motion, has been served on the attorney for the government by U.S. mail, postage prepaid, addressed to:

United States Attorney
Southern District of Texas
600 E. Harrison St., #201
Brownsville, Texas 78520-7114

Respectfully Submitted:

Roy Edward Cantu

15.

STATE OF TEXAS                          §
                                        §
                                        §
COUNTY OF JEFFERSON                     §

### AFFIDAVIT IN SUPPORT OF 28 U.S.C. § 2255

   BEFORE ME, the undersigned authority, personally appeared Roy Edward Cantu, Reg. 05508-078, who after being duly sworn, deposed as follow:

   My name is Roy Edward Cantu, I am sound mind and capable of making this affidavit, and over the age 21 years old. I am personally aware of the facts stated herein, which are true and correct to the best of my knowledge based on the corresponding and conversation I had with my court appointed appellate counsel Mr. Dale Robertson.

   After my conviction and sentence was affirmed on initial appeal by the Fifth Circuit Court of Appeals on August 11, 1999, Mr. Robertson wrote me in September 1999 and notify me about the decision of the Court. At the time, I was placed in the Special Housing Unit (SHU) at FCI-Low, Big Spring, Texas. I wrote Mr. Robertson approximately few days after receiving his letter and requested for him to petition to the Supreme Court for writ of certiorari. Subsequently, Mr. Robertson wrote me and notify me that he will petition to the Supreme Court for certiorari in October 1999.

   In March 2000, I called Mr. Robertson's office to request for my case file along with the copy of petition filed to the Supreme Court. I was told that Mr. Robertson was not in the office, however, I was assured that he will be notified of my requests. I have tried to reach Mr. Robertson on numerous occasion to inquire about my petition in the Supreme Court, but was told that he is either busy with a client or in court.

   I was reluctant to discuss my case with another inmate or sought for assistance due to fear that I may be targeted or labeled as a government informant based on the substantial assistance rendered to the government.

   After three years of waiting to hear from Mr. Robertson regarding my requests and whether there has been a decision made by the Supreme Court, I decided to speak with an inmate writ writer working in the prison library about what I should do since my lawyer have refused to notify me about Supreme Court decision. I was advised to write the Supreme Court and inquire whether there has been a decision made by the Court.

1.

On June 1, 2003, I wrote the Supreme Court of the United States and inquired whether any decision has been made on my petition. On June 10, 2003, the Supreme Court forwarded a docket case that was filed in 1995. The case information belong to my father, Roy Edward Cantu Sr V. United States. The information showed that a writ of certiorari filed on behalf of Roy Edward Cantu Sr was dismissed in 1996, for failure to comply with the Court order of filing fee.

On June 18, 2003, I wrote to the Supreme Court again explaining that my lawyer told me that my petition was filed in October 1999. I requested to know if any decision has been made. On June 25, 2003, the Supreme Court responded to my request stated that the docket and correspondence system does not show that any case was filed on my behalf in the Supreme Court.

Had I known over the years that Mr. Robertson did not petition to the Supreme Court as he told me that he did, I would have sought for alternative source to petition the Supreme Court for review, or proceeded with my post-conviction review.

I, Roy Edward Cantu, hereby execute this affidavit under penalty of perjury pursuant to Title 28 U.S.C. § 1746, on this _9_, day of July, 2003.

Affiant: _____
Roy Edward Cantu

Sworn and Subscribed to before me on this _9_, day of July, 2003.

_____
Notary Public, State of Texas.

WILLIAM THOMAS JR.
Notary Public, State of Texas
My Commission Expires
July 30, 2006

2.